UNITED STATES DISTRICT COURT

FOR THE STATE OF DELAWARE

| | |
|---|---|
| GRAYLIN L. HALL, | ) |
|     Petitioner, | ) |
| | ) |
| v. | )    Civ. Act. No. 07-003-GMS |
| | ) |
| THOMAS CARROLL, Warden, | ) |
| Delaware Correctional Center, | ) |
| And, JOSEPH R. BIDEN, III, | ) |
| Attorney General | ) |
| Of the State of Delaware, | ) |
|     Respondents. | ) |

FILED
APR 2 3 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PETITIONER'S TRAVERSE TO RESPONDENTS

ANSWER / EVIDENTIARY HEARING REQUESTED

I.    CUSTODY

Petitioner, Graylin Hall (hereafter – Hall) agrees that he is in custody as stated in the Answer. However, Respondent's Answer incorrectly states that Hall was indicted for First Degree Assault, when in fact it was Second Degree Assault. Nonetheless, Hall claims that he is not "lawfully" in custody because of the violations of his rights under the United States Constitution that are alleged in the petition for Writ of Habeas Corpus and herein. Except as expressly admitted herein, Hall denies each and every allegation of the Answer and re-affirms that his confinement is in violation of the Constitution.

1

II.   STANDARD OF REVIEW

The standard of Review is that the Federal Court is required by Federal Law to accept as true any factual allegations that are made and supported in Federal Court, since the State Court has made findings against Hall on those facts without first ordering a hearing, thereafter the State's fact-finding procedure is "unreasonable", which means that the States factual findings are not binding on Federal Habeas Corpus. See, Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004). Hall's factual allegations made in his State pleadings are clearly stated and are supported by material evidence contained in the exhibits that he presented to the State Court in support of His pleadings.

In addition, in the Answer, Respondents concede that Hall completed the process of exhaustion in State Court by presenting his factual allegations to the States highest court, and hereby requests an evidentiary hearing in Federal Court. Respondents omit entirely from their discussion what may be the most important Standard of Review to be considered at this juncture in the litigation – the standard this Honorable Court must apply in deciding whether or not to grant Hall an evidentiary hearing on one or more of the Habeas Corpus claims.

A petitioner (accord, Hall) on Federal Habeas Corpus is entitled to an Evidentiary Hearing where, as here, the petitioner establishes a "colorable" claim for relief, and where, as here, the petitioner has never been accorded a State or Federal Court Hearing on his claim. See Earp v. Oronski, 431 F.3d 1158, 1167 (9th Cir. 2005), citing Townsend v. Sain, 372 U.S. 293 (1963), and Keeney v. Tamayo-Reyes, 504 U.S. 1, 5 (1992). In stating "colorable" claim, a petitioner is merely required, as here, to allege specific facts, which, if true, would entitle him to relief. A Federal Court is not required to order a hearing where the petitioner failed to develop the facts in State Court. In such cases, the Federal Court accords a presumption of correctness to the facts found by the State Court, and need not hold any evidentiary hearing unless those facts are rebutted by clear and convincing evidence.

On the other hand, no deference is due where the State has, as here, an "unreasonable" determination of the facts; and where a State Court makes evidentiary findings without holding a hearing and giving Hall an opportunity to present evidence, such findings clearly result in an "unreasonable" determination of the facts. See Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004).

In addition, an evidentiary hearing is required, and an appellate court will remand for a hearing if the district court rules without granting one – where the petitioner establishes a "colorable" claim for relief and has never been accorded a state or federal hearing on his claim. Earp, Supra., at 1167.

As it stands, Hall requested an evidentiary hearing at every level of the State Court proceedings and each of the Courts to which he applied ruled without granting him an evidentiary hearing. Id. at Respondents Answer, p. 2. As a result, (1) Hall is entitled to an evidentiary hearing in this Court before the Court can make any credibility determinations on the facts alleged in the petition and supporting exhibits; and (2) any controverted "facts" found by the State Court while denying a request for an evidentiary hearing necessarily result from an "unreasonable" determination of the facts, and hence are not entitled to any presumption of correctness. See Earp, Supra., at 1167; Taylor, Supra., at 1101 ["where, as here, the State Court's legal error infects the fact finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it."]

III. **STATEMENT OF FACTS**

In regard to the incident that occurred on December 29, 1999, at a residence belonging to Alicia McDermott, the victim, and a 72 year old woman who lives in an area known as the Villas of Bethany West. At approximately lunchtime on December 29th, Mrs. McDermott came home from the Post Office and proceeded about her own business in her home. At some point, she heard some noise upstairs, but thought it was a neighbor tenant. She was reading the papers downstairs and doing various tasks

3

downstairs. She goes upstairs at some point and puts some money in her purse, because she's going to go somewhere later and she's going to need some money. She comes back downstairs, does a few other miscellaneous things, and goes back upstairs in her room and lays down on the bed to read for a little bit. Trial Transcript, A-54-55, (TT). At one point she goes into her bathroom and decides that she's going to take a bath. She sits on the toilet with the seat down and begins to take off her shoes and stockings, when a black man jumps out of her shower, i.e., the bathtub, and grabs her as she's sitting in there. Obviously, she's terrified, this man grabs her across her face and holds her mouth. She's screaming or trying to scream. She bites down on her attackers thumb two times, bites down on the thumb . Eventually the attacker let's go, pushes her down and runs out of the residence.

    As he's running out and going downstairs, she notices that the attacker's wearing a jacket, a multi-colored ski-type jacket. She thinks the colors are green and yellow, possibly blue. She never see's her attacker's face because of where she's sitting and because of the hand clamped over her face. But for some reason, she calls out a name three times as this person is running down the stairs. The name that she calls out is a person that she knows, who's been in her residence before. That person is Graylin Hall. She calls that name as this unidentified attacker is running down the stairs, but she doesn't know why she calls out his name. But he's been in her residence before and its someone that she's familiar with, but at trial she testifies that she never saw the attacker's face. According to her testimony when she called out this name three times as this attacker is running down the stairs he grunts and then runs out of the residence without even hesitating at the locked door, and opens the door and runs right out. T-T 56.

    The facts show that Hall at the time worked for a company called Kelly Maintenance. Kelly Maintenance did the maintenance work for the Villas of Bethany West. Hall, in his employment with Kelly Maintenance, had access to most of the residences at the Villas of Bethany West. One of the things that happened when this attacker is upstairs, is he was standing in Mrs.

4

McDermott's tub that she had some cleanser residue in the tub. This attacker had been standing in the victim's tub and there was a shoe impression on the tub floor in this cleanser. Detective Troublefield from the State Police videotaped this scene, including the shoe impression which showed the tread pattern of a pair of shoes. Detective Troublefield attempted to process this scene to try to permanently salvage what was the tread pattern in the bathtub floor. Police officers testified that they found a pair of sneakers in Hall's car, which was similar to the tread pattern on the victim's tub floor. Several witnesses testified that Hall had a multi-colored jacket that day. A video tape was admitted into evidence of Hall wearing a jacket at the Millville Service Center that morning. A co-worker testified that that day Hall came and picked him up and was wearing a jacket for most of the day that this person saw him, but that at the end of the day Hall no longer had the jacket, and that Hall also had a wound of some sort on his thumb which appeared to be fresh.

When police contacted Hall on December 29th they also say they saw a wound on his thumb. When asked by police, Hall repeatedly denied owning any kind of multi-colored jacket like that. He stated that the only jacket he owned was an old gray or green jacket that had a hole in the back, and that's the jacket he worked in. That's the jacket he was wearing that day, all day long. The State admitted into evidence videotapes from the Millville Service Center taken on December 29th, and the morning of December 27th, both of which show Hall wearing a multi-colored ski-type jacket. One of those videos from the 27th has the co-worker who Hall was with on the 29th and also the 27th, both of them were on the video from the Millville Service Center on the 27th.

The foregoing are facts alleged by the State's case-in-chief and the basis of Hall's conviction.

IV. <u>WHAT THE UNDISPUTED EVIDENCE IN THIS CASE SHOWS</u>

What the facts show is that the State's case-in-chief against Hall is predicated upon the inconclusive evidence of a coat, a cut, and a key which

5

will be addressed seriatim, as follows: The coat: The victim, Alicia McDermott, in the crime saw a nylon coat. But she never saw the assailant's face. In fact, Mrs. McDermott does not know who it was. Around the time of the crime, Hall was seen wearing a nylon jacket, or that's what the State claimed. Using the words of the State's own witness, the coat in the video resembled the one worn by the assailant. But the State never produced or admitted into evidence at Hall's trial the coat. The jury never saw it because the State never had the coat. Despite searches of Hall's home, his car, both of his work vehicles, his employer's home, various dumpsters, no such jacket was found. The evidence also shows that the description of the coat changed from a yellow, green and blue coat to a yellow coat with green on it, to a green coat with yellow on it. Now the cut. The evidence shows that Hall in fact was a maintenance worker. He did construction, which is all sorts of various handyman type construction. On the particular day in question, Hall was doing roofing. T-T 60-61. Roofing is very physical work. Hall handled asphalt shingles, nails and there was testimony that it is common for a person doing that kind of work to chop up their hands, and add to that fact that December 29th was a cold day. The temperature hovered around freezing for most of the day. There was a cut on Hall's right thumb and there was testimony that Mrs. McDermott bit her assailant's thumb two times. Mrs. McDermott testified that when she bit the thumb, she wasn't even sure if she broke the skin. She testified that there was blood and there was a cut on the inside of her mouth that resulted from the struggle and that the blood was from the thumb or was her own.

    Finally, the key. Hall was in possession of a master key that day. He was in possession of his employers key's around Christmas time and the employer was away and left Hall in charge of the business. It is true that Hall's employer, Mr. Kelly had access to the Bethany West units and indirectly Hall had access through Mr. Larry Kelly. When Hall was asked do you have a master key, he said "no". Is there a key on that ring? "I don't know", was Hall's reply. Ultimately, the evidence showed that Hall did not

know there was a Master Key on the ring. In addition, the amount obtained in this crime was $40. Moreso, what is absolutely clear on the face of the record in this case is that Hall has maintained his actual or factual innocence ab initio, and on direct examination at trial, Mrs. McDermott testified that within an "half-hour" after the burglary had occurred that the man the police had in custody (Hall) was not the man who committed the crime. T-T A-83. This is the State's case, a coat, a cut, and a key. There were no eyewitnesses, one pair of sneakers were ruled completely out and the other pair of sneakers was inconclusive altogether. The State went to great lengths to prove Hall's guilt, and ignored and did not investigate other facts that would support his innocence. If the evidence against Hall was so overwhelming, it is difficult to perceive how the jury acquitted him on Count I, Robbery in the First Degree. When Hall was first questioned within two hours of the incident, he told the police, he was in Bethany West doing roofing. "You can go there and you can talk to the people who saw me. I saw people. I talked to them. I waved to them." Hall even offered to take them to the place where the people lived who had seen him. The police refused. They simply arrested Hall and they never confirmed with him where he was, and they never went to find the people who had spoken to Hall. When the police investigated the crime scene, they took fingerprints from the bathroom wall as well as the bathroom vanity. They didn't get any fingerprints off the shower curtain. Mrs. McDermott testified that she went upstairs and put two $20 bills in her wallet, put her wallet in her purse, and that those two $20 bills were removed by the assailant. The police never checked for the prints on the wallet. T-T A-65-66. Mrs. McDermott testified that the assailant took time and unlocked the door, knew to unlock the door on the way out. The facts show that the police didn't even check the door knob for fingerprints. This was after the Bethany Police had delayed a locksmith who wanted to change the lock immediately, they wouldn't let him do it until the crime investigators came to investigate the scene.

    The evidence also shows that the police totally ignored a second point of entry. There was a metal bar on the back door of Mrs. McDermott's home

7

and the police investigator testified that, "well with the metal bar on the door, this is not a possible point of entry." So the police never investigated the glass door. But the <u>bar</u> that was in the glass door was put there by the locksmith <u>after</u> the incident. So when whoever entered Mrs. McDermott's house, entered when the glass door wasn't barred. Based upon the foregoing facts and evidence, Hall's conviction should be subject to collateral attack when as here Hall supplements his constitutional plea with a colorable claim of innocence.

V. § 2244 (d)'s LIMITATION PERIOD UNCONSTITUTIONALLY SUSPENDS HABEAS CORPUS RELIEF WHERE AS HERE, HALL SHOWS ACTUAL INNOCENSE, AND THEREFORE, AN ACTUAL INNOCENCE EXCEPTION MUST BE READ INTO THE PROVISION.

## ARGUMENT

DENIED: "Respondents contend that Hall's claim is untimely under § 2244 (d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine."
Id. at Respondents Answer, passim.

    Simply put, Hall asserts that the limitation period of § 2244 (d) unconstitutionally suspends Habeas Corpus relief since he has clearly demonstrated "actual innocence" and therefore, an "actual innocence" exception must be read into the provision. In other words, absent an exception for "actual innocence", Hall asserts, § 2244 (d) works an unconstitutional suspension of the Writ of Habeas Corpus when applied to him. See Wyzykowski v. Department of Corrections, 226 F.33d. 1213 (11th Cir. 2000) at 1217. Respondents have no valid claim against Hall or refuge in § 2244 (d) because Hall has shown actual innocence. Moreover, even if § 2244 (d)'s limitation period has expired any bar to Hall filing a first Federal petition would constitute an unconstitutional suspension of the Writ of Habeas Corpus because of the inherent injustice that results from the conviction of an innocent person (accord Hall) and the compelling evidence of Hall's innocence, as presented.

    Further, Hall asserts that Article I of the United States Constitutional-suspension clause requires an exception to § 2244 (d) for his "actual innocence" claim. In Hall's case sub justice, neither the respondents or the District Court has addressed Hall's claims of actual

innocence. As such, in rejecting Respondents § 2244 (d) plea, the District Court should address the factual issue of whether Hall has or can make a showing of actual innocence first; and his constitutional claim that the suspension clause requires an exception for actual innocence; second, see U.S. Const. Art. I, §9, cl. 2, ie., Suspension Clause, the Fourteenth Amendment's Due Process Clause, and principles of equitable tolling each requires an exception to Respondents - AEDPA's limitations period in cases where a defendant such as "Hall" demonstrates "actual innocence".

Hall's claim herein arises out of the well-established principle that "where possible, Courts must interpret congressional enactments so as to avoid raising serious constitutional questions."

In addition, the United States Supreme Court has held that a claim of actual innocence can be raised to avoid a procedural bar to the consideration of the merits of the petitioner's constitutional claims. See Schlup v. Delo, 513 U.S. 298, 326-27, 115 S. Ct. 851, 130 L.Ed. 2d 808 (1995); and Souter v. Jones, 395 F.3d. 577, 2005 FED App. 0027P (6th Cir. 2005) (Holding because AEDPA's one-year statue of limitation's is not jurisdictional, a petitioner who misses the deadline may still maintain a viable Habeas Corpus action if the Court decides that equitable tolling is appropriate). (Citations omitted).

In Hall's Habeas petition, he presented extraordinary evidence that raises sufficient doubt about his guilt and that undermines confidence in the result of his trial. In fact, Hall reiterates part of that "extraordinary evidence" in subsection IV of the instant Traverse to Respondents Answer. After a careful evaluation of the totality of the evidence offered at Hall's trial and the additional evidence presented in Hall's Habeas petition and Traverse herein, the District Court should conclude that Hall has met his burden of establishing a gateway actual innocence claim. In fact, Hall's Habeas petition set forth claims of insufficiency of the evidence and faulty jury instructions coupled with evidence to raise sufficient doubt about his guilt and that undermines confidence in the result of his trial.

Schlup, supra., at 590. As such, this Court must make a probabilistic determination about what reasonable, properly instructed jurors would do. "Schlup, 513 U.S. at 329. If its more likely than not that no reasonable juror would have found Hall guilty beyond a reasonable doubt", then Hall must pass through the gateway and argue the merits of his underlying claims." Id. at 327, 316, at 596 (Footnote omitted). Again, the State Courts fact finding procedure is unreasonable, which means that the State's fact findings are not binding on Federal Habeas Corpus. Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004). Hall was never accorded a State or Federal Court evidentiary hearing on his claims even though he established a colorable claim for relief. See Earp v. Oronski, Supra., citing Townsend v. Sain, 372 U.S. 293 (1963) and Keeney v. Tamayo-Reyes, 504 U.S. 1,5 (1992).

    Viewed in this light, Hall's constitutional concerns counsel in favor of upholding equitable tolling based on Halls credible claim of actual innocence. Wyzykowski v. Department of Corrections, supra.

    WHEREFORE, for any or all of the foregoing reasons, this Court should reject Respondent's Argument and conclude that Hall has met his burden of establishing a gateway of actual innocence claim for proper consideration of the merits of his underlying Habeas Corpus claims.

Respectfully Submitted,

*/s/ Graylin Hall*
Graylin Hall, Petitioner Pro Se
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Date: 4/19/2007

## CERTIFICATE OF SERVICE

I, Graylin Hall, hereby certify that I have served a true And correct cop(ies) of the attached: Petitioner's Traverse To Respondents Answer / Evidentiary Hearing Requested upon the following parties / person(s):

TO:    OFFICE OF THE CLERK
         UNITED STATES DISTRICT COURT
         844 N. KING STREET, LOCKBOX 18
         WILMINGTON, DE 19801-3570

TO:    DEPARTMENT OF JUSTICE
         STATE OFFICE BUILDING
         820 N. FRENCH STREET
         WILMINGTON, DE 19801-3509

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correction Center, Smyrna DE 19977

On this _19_ day of _April_, 2007

_Graylin Hall_



I/M: GRALLEW HALL
SBI# 159336  UNIT S-L
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



OFFICE OF THE Clerk
United States District Court
844 N. King Street Lockbox #18
Wilmington, Delaware
19801-3670